■ ZANE A. PRINCE, Respondent, v ITT LIFE INSURANCE CORPORATION, Appellant. — Order unanimously affirmed, with costs. Memorandum: While serving in the Army in October of 1978, plaintiff purchased a life insurance policy from defendant covering him, his wife, and later his infant daughter. The policy consists of five parts, four of which provide term insurance having no cash value. The fifth part is an annuity rider providing either a death benefit or, if plaintiff survives to age 65, retirement income. The annuity rider accumulates cash value. The agent who sold plaintiff the policy pointed out that defendant offers an automatic premium loan feature, whereby unpaid premiums will be paid automatically out of the policy's cash value. Plaintiff requested this feature on his application form. Premiums were thereafter paid by payroll deduction. In May of 1980 plaintiff was discharged from the service. His premiums were paid up through June 5, and for the next two months plaintiff made no payments thinking he was protected by the automatic premium loan feature. In August plaintiff's wife died in a car crash. Plaintiff requested that defendant pay the face value of the policy, but defendant refused, claiming that the policy lapsed for nonpayment of premiums. Defendant's position is that the automatic premium loan mechanism cannot reach the cash value of the annuity rider because the latter contains a section headed "LOANS" containing the following sentence: "The cash value of this rider may not be included in

any determination of the loan value applicable to this policy". Special Term concluded that this sentence does not adequately explain to the policyholder that the rider's cash value cannot be used for automatic premium loans. We agree that this sentence creates an ambiguity and that the policy must, therefore, be construed against defendant. Where the provisions of an insurance contract are clear and unambiguous they must be enforced as written (*Breed v Insurance Co. of North Amer.*, 46 NY2d 351, 355; *Government Employees Ins. Co. v Kligler*, 42 NY2d 863, 864). However, "where the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policyholder and against the company which issued the policy" (*Little v Blue Cross of Western N.Y.*, 72 AD2d 200, 203, citing *Miller v Continental Ins. Co.*, 40 NY2d 675, 678-679; *Hartol Prods. Corp. v Prudential Ins. Co. of Amer.*, 290 NY 44, 49; *American Home Assur. Co. v Port Auth. of N.Y. & N.J.*, 66 AD2d 269, 276; see, also, *Stroehmann v Mutual Life Ins. Co. of N.Y.*, 300 US 435, 439; *Mutual Ins. Co. v Hurni Co.*, 263 US 167, 174). The insurer bears the burden of establishing that its construction is not only reasonable, but the only fair construction (*Sincoff v Liberty Mut. Fire Ins. Co.*, 11 NY2d 386, 390; *Kronfeld v Fidelity & Cas. Co. of N.Y.*, 53 AD2d 190, 194). Moreover, "a contract of insurance, drawn by the insurer, must be read through the eyes of the average man on the street or the average housewife who purchases it" (*Lachs v Fidelity & Cas. Co. of N.Y.*, 306 NY 357, 364; see, also, *Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 32-33; *Tyroler v Continental Cas. Co.*, 31 AD2d 8, affd 25 NY2d 710). The provisions of this policy are anything but "clear and unambiguous", certainly not to the average layman. The sentence so heavily relied on by defendant, i.e., "The cash value of this rider may not be included in any determination of the loan value applicable to this policy," could be construed by the average man on the street to mean that the cash value of the rider may not be used to obtain an outright loan of cash. There is certainly nothing in this sentence to warn the policyholder that the automatic premium feature is in jeopardy. Indeed, that feature is affected only if the words "loan value" are given a special meaning. However, there is nothing in the policy to put the reader on notice that those words have a special meaning. The words are not set off in any way, such as by italics, capital letters, or quotation marks. Moreover, the policy contains no definition of terms section, nor does it state anywhere that the words "loan value" shall have a special meaning wherever used. By contrast, when the term "loan value" is used in the automatic premium loan section, the words are capitalized or followed by the phrase "as defined in the Loan Value Provision". In the absence of a direction to the contrary, words in a policy are to be given their ordinary meaning as understood by an average person (*Miller v Continental Ins. Co., supra; J.G.A. Constr. Corp. v Charter Oak Fire Ins. Co.*, 66 AD2d 315, 319; *Brown v Hearthstone Ins. Co. of Mass.*, 19 AD2d 578). " 'If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known' " (*Sperling v Great Amer. Ind. Co.*, 7 NY2d 442, 447, quoted in *Miller v Continental Ins. Co., supra*, p 678). "[I]nsurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import" (*Janneck v Metropolitan Life Ins. Co.*, 162 NY 574, 577-578). Reading the sentence relied on by defendant, we conclude that an average layman would not be put on notice that his automatic premium feature has been rendered inoperative. Because of

this ambiguity, the insurer may not avoid its obligations under the policy. (Appeal from order of Supreme Court, Onondaga County, Tenney, J. — life insurance proceeds — summary judgment.) Present — Dillon, P. J., Simons, Doerr, Boomer and Schnepp, JJ.