[645 NYS2d 221]

Alan M. Harrington, Appellant, v Amica Mutual Insurance Company, Respondent.

Fourth Department, July 12, 1996

APPEARANCES OF COUNSEL

*Mackenzie, Smith, Lewis, Michell & Hughes, L. L. P.,* Syracuse *(Thomas J. Finn* of counsel), for appellant.

*Hancock & Estabrook, L. L. P.,* Syracuse *(Janet D. Callahan* of counsel), for respondent.

### OPINION OF THE COURT

WESLEY, J.

This case presents an issue of first impression in New York, whether the replacement cost provisions of a homeowner's insurance policy require an insured to rebuild his home before he can recover on a claim for that cost. We hold that they do.

## I

The essential facts are not in dispute. In February 1977 plaintiff, Alan M. Harrington, purchased a home at 3610 Oran Delphi Road in the Town of Pompey. Plaintiff purchased insurance for the property from defendant, Amica Mutual Insurance Company, which he kept in force through February 1992.

The replacement cost provisions of the policy require that defendant

"pay the cost to repair or replace [the building], after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

"(a) the limit of liability under this policy that applies to the building;

"(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

"(c) the necessary amount actually spent to repair or replace the damaged building."

The policy further provides that defendant would pay no more than the actual cash value of the damage unless "actual repair or replacement [was] complete", or the cost to repair or replace the damage was both less than 5% of the amount of insurance and less than $1,000.

On November 30, 1991, a fire totally destroyed plaintiff's home. Plaintiff notified defendant of the fire the next day and contracted with National Fire Adjustment Company to negotiate a settlement with defendant.

In a letter dated February 14, 1992, defendant estimated plaintiff's total replacement cost at $104,963.16. The estimate included $5,775 for debris removal. Defendant stated in the letter that it would pay no more than the actual cash value of the damages until the actual repair or replacement was complete, and assigned an actual cash value of 70% of the loss, or $73,474.21. Plaintiff does not contest the actual cash value figure.

Prior to his receipt of defendant's estimate of the replacement cost, plaintiff entered into a land contract with Walter Lindow for the sale of the premises. The sale price was $22,500, payable over five years. In the contract, Lindow acknowledged that he was aware of the condition of the property, that he would maintain fire and liability insurance, and that he would bear any risk of loss. Although Lindow was allowed to enter into possession of the premises on March 1, 1992, delivery of the deed would not occur until after the final installment was paid. If Lindow defaulted on the agreement, plaintiff would be entitled to regain possession and to retain all payments previously made. Plaintiff also had the right to retain any improvements made by Lindow as liquidated damages for a default. After Lindow and his wife took possession of the premises, they rebuilt the dwelling, completing work by early 1993.

Plaintiff never advised defendant that he had entered into the land contract, that the Lindows had possession of the premises, and that the Lindows were making the improvements to the property. Defendant first learned of the sale after arranging for final inspection of the repairs. The Lindows informed defendant that plaintiff had not made the repairs, and plaintiff admitted at his deposition that he had not paid for the repairs.

By letter dated April 13, 1993, defendant notified plaintiff that it would not pay him anything more than the actual cash value that it had previously paid, because plaintiff had not paid for replacement of the dwelling. Plaintiff commenced this action seeking the $31,488.95 retained by defendant, asserting causes of action for breach of contract, negligent misrepresentation, promissory estoppel and unjust enrichment.

Plaintiff moved for summary judgment on the causes of action for breach of contract, promissory estoppel and unjust enrichment. Plaintiff argued that nothing in the policy required him to perform the repairs himself in order to receive the entire replacement cost. He argued that his interpretation of the policy is reasonable, and that he had relied on that interpretation in entering into the land contract with Lindow.

Defendant opposed the motion and cross-moved for summary judgment dismissing the complaint. Defendant argued that estoppel does not apply because plaintiff had entered into the land contract before defendant issued its estimate of the replacement cost and had concealed the existence of the land contract from defendant. Defendant reiterated its position that it had fulfilled its obligations under the policy by paying plaintiff the actual cash value of the property, and asserted that plaintiff was not entitled to any additional replacement cost coverage because he had sustained no pecuniary loss in connection with the replacement of the dwelling by the Lindows.

Supreme Court denied the motion and granted the cross motion, relying on *Paluszek v Safeco Ins. Co.* (164 Ill App 3d 511, 517 NE2d 565). Plaintiff appeals.

## II

In *Paluszek v Safeco Ins. Co. (supra)*, the insurer, relying upon a similar insurance policy provision, paid the plaintiff and her then husband (the Coxes) the actual cash value of the dwelling. The next month, the Coxes sold their home in "as is" condition without any repairs having been made. Thereafter, they commenced an action for the additional cost of repairs. The insurer subsequently learned that the home had been repaired by the purchaser.

The Illinois appellate court held that the insurer was entitled to summary judgment dismissing the complaint, even though the insurance policy did not specify who was to make the repairs (*Paluszek v Safeco Ins. Co.,* 164 Ill App 3d, *supra,* at 515-516, 517 NE2d, *supra,* at 567-568). The court noted that the fundamental purpose of insurance coverage is to indemnify the insured for an actual loss. The court held that, when the insurer paid the insureds the actual cash value of the house, the insurer had paid all that it was obligated to pay until the repairs were completed, and that the insurer had fulfilled its obligation for the loss that the insureds had suffered (*Paluszek v Safeco Ins. Co.*, 164 Ill App 3d, *supra,* at 516, 517 NE2d, *supra,* at 568). Another court, relying on *Paluszek*, has reached the same result (*see, Athena Rest. v Sheffield Ins. Co.*, 681 F Supp 561).

Similarly, in cases where no repairs were done, courts have held that the measure of a plaintiff's damages is the actual cash value, not the replacement cost (*see, e.g., Hess v North Pac. Ins. Co.*, 122 Wash 2d 180, 859 P2d 586; *Harbor House*

*Condominium Assn. v Massachusetts Bay Ins. Co.*, 915 F2d 316, 320; *Higginbotham v American Family Ins. Co.*, 143 Ill App 3d 398, 493 NE2d 373; *National Tea Co. v Commerce & Indus. Ins. Co.*, 119 Ill App 3d 195, 456 NE2d 206; *Huggins v Hanover Ins. Co.*, 423 So 2d 147, 150 [Ala]; *see also, Ferrara v Insurance Co. of N. Am.*, 135 AD2d 366, 368-369; Annotation, *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property*, 1 ALR5th 817, §§ 12-14; 15 Couch, Insurance 2d § 54:148 [rev ed]; *cf., Zaitchick v American Motorists Ins. Co.*, 554 F Supp 209, 217, *affd* 742 F2d 1441, *cert denied* 464 US 851 [insurer may be estopped from denying claim for replacement cost, if it has not paid plaintiff actual cash value to enable plaintiff to begin repairs]).

"The purpose of an action on a fire insurance policy is to attempt to put the insured in as good a position as he would have been had no fire occurred, by awarding him the actual cash value of the property lost or damaged" (*Incardona v Home Indem. Co.*, 60 AD2d 749; *see also*, 15 Couch, Insurance 2d § 54:4 [rev ed]). Plaintiff would have been entitled to recover the actual cash value from defendant even if a third party had completed the repairs at no cost to plaintiff (*see, Foley v Manufacturers & Builders' Fire Ins. Co.*, 152 NY 131; *Alexandra Rest. v New Hampshire Ins. Co.*, 272 App Div 346, *affd* 297 NY 858). Beyond that, the replacement cost provisions of the policy set forth three measures of coverage, one of which is not applicable here because the parties agree that the policy's limit of liability ($112,000) is not the lowest of the three figures. Of the remaining two, plaintiff can recover the replacement cost or the "necessary amount actually spent to repair or replace the damaged building", whichever is less. Payment is due when the repair or replacement is complete.

Plaintiff contends in his complaint and his affidavit in support of his motion that he is entitled to recover the amount of defendant's estimate of replacement costs once Lindow completed the repairs. Plaintiff's contention ignores several facts. First, plaintiff had no "costs"—he spent nothing to replace the dwelling. Second, the new structure does not "replace" plaintiff's home; plaintiff does not live there. Third, plaintiff did not need to rebuild on the premises, and has never indicated that he intends to rebuild elsewhere (*see, Kumar v Travelers Ins. Co.*, 211 AD2d 128).

Moreover, the record indicates that the Lindows spent considerably less than the amount of defendant's replacement cost estimate. Plaintiff does not contest the amount spent by the

Lindows. Pursuant to plaintiff's analysis that the identity of the "rebuilder" is irrelevant, defendant would only be required to pay the lesser of the replacement cost ($104,963.16) or the necessary amount "actually spent" to replace the dwelling. " 'Certainly, considering the purpose of [the replacement cost provisions], it is reasonable to deny recovery for replacement costs where the insured is not going to replace the property as he would then make a profit out of his loss' " (*Hess v North Pac. Ins. Co.*, 122 Wash 2d, *supra,* at 187, 859 P2d, *supra,* at 589-590, quoting 6 Appleman, Insurance Law § 3823, n 66.57 [1992 Supp]).

We note that a result seemingly contrary to *Paluszek* was reached in *Ruter v Northwestern Fire & Mar. Ins. Co.* (72 NJ Super 467, 178 A2d 640, *certification denied* 37 NJ 229, 181 A2d 12). In *Ruter*, however, the purchaser of the damaged premises did not pay cash for the property, but gave the insured a purchase-money mortgage and agreed to spend an amount equal to the entire purchase price toward the construction of a new building. In effect, then, the insured *had* provided for replacement of the damaged building.

In *Ruter*, the court found the language of the replacement cost provision of the policy to be ambiguous, and held that a reasonable interpretation of that provision did not require the insured to incur the replacement costs. The New Jersey court noted:

" 'When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow." ' [Citation omitted.]

" 'Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful import are strictly construed against the insurer.' *Hunt v Hospital Service Plan of N.J.*, 33 NJ 98, 102, 103, 162 A2d 561, 563 (1960)" (*Ruter v Northwestern Fire & Mar. Ins. Co.*, 72 NJ Super, *supra,* at 471, 178 A2d, *supra,* at 642).

New York law closely parallels New Jersey law in that regard: "Where the provisions of an insurance contract are clear and unambiguous, they must be enforced as written (*see, State of*

*New York v Home Indem. Co.*, 66 NY2d 669, 671; *Breed v Insurance Co.*, 46 NY2d 351, 355, *rearg denied* 46 NY2d 940; *Prince v ITT Life Ins. Corp.*, 89 AD2d 779, 780). However, 'where the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policyholder and against the company which issued the policy' (*Little v Blue Cross*, 72 AD2d 200, 203). This rule is enforced even more strictly when the language at issue purports to limit the company's liability (*Breed v Insurance Co., supra*, at 353; *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.*, 34 NY2d 356; *Matter of Hanover Ins. Co. [St. Louis]*, 119 AD2d 529, 532, *appeal dismissed* 68 NY2d 751; *Little v Blue Cross, supra*). If an ambiguity exists, the insurer bears the burden of establishing that the construction it advances is not only reasonable, but also that it is the only fair construction (*see, Sincoff v Liberty Mut. Fire Ins. Co.*, 11 NY2d 386, 390; *Bronx Sav. Bank v Weigandt*, 1 NY2d 545, 551; *Prince v ITT Life Ins. Corp., supra*), viewed through the eyes of the 'average man on the street' (*Lachs v Fidelity & Cas. Co.*, 306 NY 357, 364, *rearg denied* 306 NY 941)" (*Venigalla v Penn Mut. Ins. Co.*, 130 AD2d 974, 975, *lv dismissed* 70 NY2d 747).

We part company with our colleagues in New Jersey in our analysis of whether defendant established that its interpretation of the policy was reasonable and fair when viewed through the eyes of the "average" person. Replacement cost coverage inherently requires a replacement (a substitute structure for the insured) and costs (expenses incurred by the insured in obtaining the replacement); without them, the replacement cost provision becomes a mere wager. Because plaintiff has not incurred replacement costs in this case, plaintiff's loss is defined by the building's actual cash value.

Plaintiff attempts to distinguish *Paluszek (supra)* by pointing out that it involved an outright sale, not a land contract. Although plaintiff still holds title to the property, and has an insurable interest in its full value (*see, Johnson v New York Mut. Underwriters Ins. Co.*, 182 AD2d 1070), the terms of the land contract do not alter the essential fact that plaintiff did not pay for the repairs to the home. Even if Walter Lindow defaults and plaintiff regains possession under the land contract, plaintiff retains as liquidated damages the improvements made by the Lindows.

### III

Plaintiff contends that defendant is estopped from denying plaintiff the replacement cost of the premises, because plaintiff

relied on a reasonable interpretation of the insurance policy prior to entering into the land sale contract. We disagree. For the reasons noted above, we believe that plaintiff's interpretation was not a reasonable one. Moreover, defendant never took a position contrary to the position that it now takes, i.e., that plaintiff is not entitled to recover the replacement cost because the Lindows, acting on their own behalf, made the repairs.

Accordingly, the order granting summary judgment to defendant should be affirmed.

GREEN, J. (dissenting). I respectfully dissent. Under the loss settlement section of the policy, defendant agreed to pay the cost to repair or replace plaintiff's dwelling. That section further provides that defendant's obligation to pay more than the actual cash value of the damage does not arise unless "actual repair or replacement is complete." Nothing in the policy imposes the additional condition that the repair or replacement be made by plaintiff himself. Had defendant intended to place that further limitation upon plaintiff's recovery, it could have done so explicitly (*see, Ruter v Northwestern Fire & Mar. Ins. Co.,* 72 NJ Super 467, 178 A2d 640, *certification denied* 37 NJ 229, 181 A2d 12; *Reese v Northern Ins. Co.,* 207 Pa Super 19, 215 A2d 266). The average policyholder would not read that unstated limitation on the right to recover repair or replacement costs into the policy (*see, Miller v Continental Ins. Co.,* 40 NY2d 675, 676; *Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21). Furthermore, it is undisputed that plaintiff remains the legal owner of the insured premises (*see, Lind v Lind,* 203 AD2d 696, *lv denied* 84 NY2d 803). Unlike the policyholder in *Paluszek v Safeco Ins. Co.* (164 Ill App 3d 511, 517 NE2d 565), therefore, plaintiff did not divest himself of his interest in the property before seeking replacement coverage under the policy (*see, Johnson v New York Mut. Underwriters Ins. Co.,* 182 AD2d 1070).

DENMAN, P. J., BALIO and BOEHM, JJ., concur with WESLEY, J.; GREEN, J., dissents in a separate opinion.

Order affirmed, with costs.