**FITZHUGH 25 PARTNERS, L.P., Appellant**

v.

**KILN SYNDICATE KLN 501, Chaucer Syndicate RAS 1096, Brit Syndicate BRT 2987, Appellees.**

**No. 05–07–01334–CV.**

Court of Appeals of Texas, Dallas.

Aug. 20, 2008.

James L. Cornell, Cornell & Pardue, Houston, for Appellant.

Richard P. Colquitt, Fulbright & Jaworski, Houston, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

This is an appeal from a summary judgment on an agreed statement of facts. Fitzhugh 25 Partners, L.P. brings this appeal contending the trial court erred in concluding KILN Syndicate KLN 501, Chaucer Syndicate RAS 1096, and BRIT Syndicate BRT 2987 (the "Underwriters") did not breach their contract of insurance coverage when they refused to pay Fitzhugh's claim for replacement costs. We conclude the trial court correctly granted summary judgment in favor of the Underwriters on Fitzhugh's claims for declaratory judgment and breach of contract. We affirm the trial court's judgment.

### I.

Our recitation of the pertinent facts in this case is taken from the agreed statement of facts signed by the parties. The statement of facts shows that Fitzhugh owned an apartment complex located at 1900 and 1904 N. Fitzhugh Avenue in Dallas, Texas. Fitzhugh purchased a commercial property insurance policy for the apartments and the Underwriters were the insurers under the policy. The policy included "replacement cost" coverage for which Fitzhugh paid additional premiums.

On July 2, 2004, fire damaged the property at issue. Fitzhugh made a claim under the policy for the loss, and the Underwriters paid Fitzhugh $283,460.21 as the actual cash value of the property. The apartments were eventually demolished, and the lots on which the apartments were located remain vacant.

On March 14, 2006, Fitzhugh purchased a 28.87% interest in an industrial property in Houston, Texas, known as the West Hardy Business Center. The West Hardy Business Center is an urban commercial office park. On September 27, Fitzhugh sent the Underwriters an e-mail notifying them that it had "chosen to replace the

building at 1900 N. Fitzhugh ... by purchasing another commercial property." According to Fitzhugh, its purchase of the interest in the West Hardy Business Center constituted a "replacement" of the apartment complex as contemplated by the "replacement cost" provisions of the policy and it was entitled to recover an additional $207,692.78.

The "replacement cost" provisions of the policy state the following:

When replacement cost is shown on the "declarations" for covered property, the value of covered property will be based upon the replacement cost without any deduction for depreciation.

The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for actual cash value before repair or replacement takes place, and later for replacement cost if "you" notify "us" of your "intent" within 180 days after the loss.

The Underwriters refused to pay Fitzhugh's replacement cost claim contending its investment in the business center was not a "replacement" of the damaged apartment complex. Fitzhugh brought this suit seeking a declaratory judgment and damages for breach of contract based upon the Underwriters' failure to pay its replacement cost claim.

Both sides moved for summary judgment. The trial court granted the Underwriters' motion for summary judgment and denied Fitzhugh's motion. Fitzhugh brings this appeal challenging only the tri-

al court's decision to grant summary judgment in favor of the Underwriters.

## II.

The sole issue in this appeal is whether the summary judgment evidence shows, as a matter of law, that Fitzhugh was not entitled to recover under the policy on its replacement cost claim. The standard of review for a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail was established as a matter of law. *See Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

The Underwriters contend Fitzhugh is not entitled to recover on its claim for replacement costs because Fitzhugh has not "replaced" the insured apartment complex as required under the policy. Fitzhugh responds that the replacement requirement is not a condition precedent to recovery and, to the extent replacement is required under the policy, the Underwriters must show they were prejudiced by Fitzhugh's alleged failure to comply. Fitzhugh further argues that the Underwriters's construction of the term "replacement" is unduly limited and the term may be read to encompass Fitzhugh's investment in the office park. We disagree with both of Fitzhugh's arguments.

The clear language of the policy states that "[r]eplacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced." Although Texas state courts have not addressed the issue, courts across the country that have considered the meaning of the same or similar language in a property insurance policy have universally held that such language requires repair or replacement of the destroyed property before the insured is entitled to recover replacement cost damages. *See, e.g., Lerer Realty*

*Corp. v. MFB Mut. Ins. Co.,* 474 F.2d 410, 413 (5th Cir.1973) (liability for replacement cost calculated only after insured actually has property repaired, rebuilt, or replaced); *Harrington v. Amica Mut. Ins. Co.,* 223 A.D.2d 222, 645 N.Y.S.2d 221, 224 (N.Y.App.Div.1996); *Huggins v. Hanover Ins. Co.,* 423 So.2d 147, 150 (Ala.1982).

Despite the plain language of the policy, Fitzhugh contends its alleged failure to repair or replace the destroyed property did not excuse the Underwriters' failure to perform. Fitzhugh relies on the Texas Supreme Court cases of *PAJ, Inc. v. Hanover Insurance Co.,* 243 S.W.3d 630 (Tex. 2008) and *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994). In *PAJ,* the court held that, before an insurer can deny coverage under a commercial general liability policy based on the insured's failure to abide by the policy's notice provisions, the insurer must show it was prejudiced by the breach. *See PAJ,* 243 S.W.3d at 632. Similarly, in *Hernandez,* the court held that an insurer could not deny coverage based on the insured's failure to abide by the "settlement without consent" provision where the insurer was not prejudiced by the insured's action. *See Hernandez,* 875 S.W.2d at 693–94. The court concluded that where the insurer was not prejudiced, the insured's breach was not material and, therefore, did not excuse the insurer's obligation to perform under the contract. *Id.* at 694. Fitzhugh argues, based on these cases, that the Underwriters are not entitled to summary judgment because they failed to show they were prejudiced by Fitzhugh's failure to replace the property.

■ Fitzhugh's attempt to equate the replacement requirement in its property insurance policy with the notice and settlement provisions of the commercial general liability policies at issue in *PAJ* and *Hernandez* is unpersuasive. Notice and set-

tlement provisions are fundamentally different from the replacement requirement at issue in this case. Unlike the act of giving an insurer notice of a claim or settling a claim without the insurer's knowledge, the replacement of damaged property is an event that triggers coverage. It is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional coverage. To allow an insured to recover replacement costs in the absence of actual replacement would permit the insured to recover for a loss he has not suffered. *See Harrington,* 645 N.Y.S.2d at 224 (reasonable to deny recovery of replacement costs where insured is not going to replace property as he would profit from his loss). Accordingly, we conclude that Fitzhugh was required to replace the damaged property as a condition precedent to its recovery under the policy and that its failure to do so negates its entitlement to recover replacement costs.

Fitzhugh next argues that it complied with the requirement to replace the damaged property by investing in the business complex in Houston. Fitzhugh argues that nothing in the policy requires it to replace the destroyed apartment complex with a building that serves the same function. Fitzhugh further argues the Underwriters' construction of the policy engrafts the words "functionally similar" onto the term "replacement" and thereby impermissibly rewrites the policy to have limitations not found in the policy's language. We disagree. The Underwriters's construction of the policy language is not unduly limiting. Instead, Fitzhugh's construction expands the meaning of the word "replacement" beyond its reasonable and commonly accepted definition.

█ The word "replacement" is not defined in the policy. We must, therefore, give the term its ordinary and generally accepted meaning. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 158–159 (Tex.2003). Webster's Third New International Dictionary defines "replacement" as a "substitution" or "a new fixed asset or portion of an asset that takes the place of a discarded one." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1925 (1993).[1] For something to be a "substitution" or "take the place of" the original, it must serve the same function as the original. The vast majority of cases that have examined this issue have concluded that the term "replacement" inherently contains the element of functional similarity. *See, e.g., SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC,* 445 F.Supp.2d 320, 334 (S.D.N.Y.2006) (for rebuilt property to be replacement there must be "functional similarity"); *Harrington,* 645 N.Y.S.2d at 226 (new structure did not "replace" insured's home where insured did not live there); *Conway v. Farmers Home Mut. Ins. Co.,* 26 Cal. App.4th 1185, 31 Cal.Rptr.2d 883 (1994) (term "replace" includes substituting an item that serves same function); *Huggins,* 423 So.2d at 150 (house was a "replacement" where it served same function as original). *but see Ruter v. N.W. Fire & Marine Ins. Co.,* 72 N.J.Super. 467, 178 A.2d 640, 643 (1962) (replacement need not be identical to original or intended for same occupancy and use).

We agree with Fitzhugh's contention that the policy's limitation on recovery of replacement costs to "the cost of repair or replacement with similar materials on the same site and used for the same purpose" is merely a method of calculating damages and not a requirement that Fitzhugh replace the apartment complex with substantially identical buildings at the same physi-

1. We note that Webster's also defines the term "replacement cost" as "the current cost of replacing a fixed asset with a new one of equal effectiveness." *Id.*

cal location. We disagree, however, with Fitzhugh's contention that it may spend the money it recovers under this measure of damages on anything it chooses. Such an interpretation reads the condition that the property be "replaced" out of the policy.

Under the policy, Fitzhugh was permitted to replace the apartments with different buildings at a different site as long as the new buildings were devoted to the same use. For example, it could have purchased or built a larger apartment complex at a different location. *See Davis v. Allstate Ins. Co.,* 781 So.2d 1143, 1144–45 (Fla.Dist.Ct.App.2001). The amount of Fitzhugh's recovery under the policy was limited to the cost of rebuilding similar or comparable buildings on the same site or the amount it actually spent to replace the property, whichever was less. *See id.; see also Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 425 (Tex. 2004). For the replacement cost coverage to apply, however, Fitzhugh must have purchased or built a property that was functionally similar to the property that was destroyed. *See S & S Tobacco & Candy Co., Inc. v. Greater New York Mut. Ins. Co.,* 224 Conn. 313, 617 A.2d 1388, 1390–91 (1992). If the new property is not functionally similar to the destroyed property, it is an unrelated expenditure and the destroyed property has not been "replaced."

Finally, Fitzhugh argues the commercial office park is "functionally similar" to the destroyed apartment complex and, therefore, qualifies as a replacement property. Fitzhugh contends that because the office park is a property with rent-paying tenants, it serves as the functional equivalent of the apartment complex. Such an interpretation would expand the definition of the term "replacement" far beyond its reasonable meaning. Under Fitzhugh's analysis, any form of property with tenants could serve as a replacement for the apartment complex. Fitzhugh is focusing on one aspect of the property to the exclusion of others to conclude the properties are functionally similar. This type of analysis would allow an insured to replace a house with an apartment complex because they are both "residential" or to replace an office building with a hospital because they both involve the rendition of professional services to the public. Overall, an office park, which has as its primary function the conduct of business, is not functionally similar to an apartment complex, which functions primarily as a residence for individuals and families.

Based on the foregoing, we conclude Fitzhugh did not replace the destroyed property covered under the policy and, therefore, did not meet the condition precedent to its recovery of replacement costs. The trial court correctly granted summary judgment in favor of the Underwriters on Fitzhugh's claims.

We affirm the trial court's judgment.