NO. 15-25-00115-CV

ACCEPTED
15-25-00115-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/18/2025 1:00 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/18/2025 2:04:46 PM
CHRISTOPHER A. PRINE
Clerk

# In the
# Fifteenth Court of Appeals
# Austin, Texas

TEXAS ASSOCIATION OF SCHOOL BOARDS RISK MANAGEMENT FUND,

*Appellant,*

v.

SOUTHWEST TEXAS JUNIOR COLLEGE,

*Appellee.*

Appeal from the 83rd Judicial District Court
Val Verde County, Texas, No. 2023-0279-CIV
The Honorable Robert E. Cadena, Presiding Judge

## REPLY BRIEF OF APPELLANT

Jack W. Higdon
Texas Bar No. 24007360
jack.higdon@blankrome.com
Barry Abrams
Texas Bar No. 00822700
barry.abrams@blankrome.com
Joshua A. Huber
Texas Bar No. 24065457
josh.huber@blankrome.com
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002-2727
(713) 228-6601
(713) 228-6605 - Fax

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION...........................................................................1

II.   ARGUMENT ................................................................................3

    A.    THE COLLEGE MISSTATES THE STANDARD OF REVIEW APPLICABLE TO THE FUND'S JURISDICTIONAL CHALLENGE........3

    B.    THE COLLEGE CANNOT OVERCOME THE FUND'S IMMUNITY THROUGH ARTFUL PLEADING....................................................5

    C.    THE TEXAS SUPREME COURT DISAPPROVED *CITY OF MESQUITE* AND THE NOTION THAT COURTS NEED NOT "PARSE THE PLEADINGS" TO DETERMINE THE SCOPE OF THE IMMUNITY WAIVER UNDER THE ACT ........................................................7

    D.    THE ACT DOES NOT WAIVE THE FUND'S IMMUNITY FROM SUIT AND LIABILITY BASED UPON THE COLLEGE'S EQUITABLE THEORIES, WHICH IT ASSERTS *OFFENSIVELY* IN AN ATTEMPT TO CREATE COVERAGE WHERE NONE EXISTS............................9

        1.    The Express Terms of the Coverage Documents Do Not Provide RCV Coverage for Unrepaired and Unreplaced Losses .......................................................9

        2.    Unlike in *Colorado* and *Greenville*, the College Asserts Waiver and Estoppel Offensively, Purportedly to Create RCV Coverage Where None Exists..................12

        3.    Section 271.155 Does Not Grant an Immunity Waiver for the College's Equitable Theories...........................15

        4.    The College Did Not Meet its Evidentiary Burden.....19

    E.    THE ACT DOES NOT WAIVE THE FUND'S IMMUNITY FROM THE COLLEGE'S CONSEQUENTIAL DAMAGES CLAIM .................21

III.  PRAYER .................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*City of Corpus Christi v. Graham Construction Services, Inc.*,
No. 13-19-00367-CV, 2020 Tex. App. LEXIS 4734 (Tex. App.—
Corpus Christi June 25, 2020, pet. denied) .................................. 24, 25

*City of Mesquite v. PKG Contracting, Inc.*,
263 S.W.3d 444 (Tex. App.—Dallas 2008, pet. denied) .................... 7, 8

*City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*,
381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied) ............. 1

*Cty. of Galveston v. Triple B Servs., LLP*,
498 S.W.3d 176 (Tex. App.—Houston [1st Dist.] 2016, pet.
denied) ...................................................................................... 22

*David J. Sacks, P.C. v. Haden*,
266 S.W.3d 447 (Tex. 2008) ........................................................... 10

*Ewing Constr. Co. v. Amerisure Ins. Co.*,
420 S.W.3d 30 (Tex. 2014) ............................................................. 15

*Farmers Tex. Cnty. Mut. Ins. Co. v. Wilkinson*,
601 S.W.2d 520 (Tex. App.—Austin 1980, writ ref'd n.r.e.) .............. 19

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001) ............................................................. 21

*Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*,
261 S.W.3d 861 (Tex. App.—Dallas 2008, pet. denied) ................ 11, 14

*Green Acres Baptist Church, Inc. v. Bhd. Mut. Ins. Co.*,
No. 6:23-cv-566-JDK, 2025 U.S. Dist. LEXIS 126690 (E.D. Tex.
2025) ......................................................................................... 11

*Green Intern., Inc. v. Solis*,
951 S.W.2d 384 (Tex. 1997) ........................................................... 22

*Hidalgo Cnty. v. Dyer*,
 358 S.W.3d 698 (Tex. App.—Corpus Christi—Edinburg 2011,
 no pet.)..................................................................................................5, 6

*Kan. City S. v. Port of Corpus Christi Auth.*,
 305 S.W.3d 296 (Tex. App.—Corpus Christi 2009, pet. denied)........12

*LeBlanc v. Lange*,
 365 S.W.3d 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.)..........21

*Matzen v. McLane*,
 659 S.W.3d 381 (Tex. 2021) ......................................................20, 21

*McLennan Cnty. Water Control & Improvement Dist. #2 v. Geer*,
 No. 10-17-00399-CV, 2020 Tex. App. LEXIS 5663, 2020 WL
 4218085 (Tex. App.—Waco July 22, 2020, no pet.) .............................5

*Methodist Hosp. v. Addison*,
 574 S.W.3d 490 (Tex. App.—Houston [14th Dist.] 2019, no pet.)........6

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
 253 S.W.3d 653 (Tex. 2008) ...............................................................9

*Nat'l Fire Ins. Co. v. State & Cty. Mut. Fire Ins. Co.*,
 No. 01-11-00176-CV, 2012 Tex. App. LEXIS 7729 (Tex. App.—
 Houston [1st Dist.] Aug. 30, 2012, no pet.) .......................................18

*Nettles v. GTECH Corp.*,
 606 S.W.3d 726 (Tex. 2020) ................................................................5

*Port Freeport v. RLB Contracting Inc.*,
 369 S.W.3d 581 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ...7

*Prairie View A&M Univ. v. Chatha*,
 381 S.W.3d 500 (Tex. 2012) ..............................................................17

*Prime Time Family Entertainment Center, Inc. v. Axis Insurance Co.*,
 630 S.W.3d 226 (Tex. App.—Eastland 2020, no pet.) ....................7, 18

iii

*Roma ISD v. Ewing Const. Co.,*
No. 04-12-00035-CV, 2012 Tex. App. LEXIS 5968 (Tex. App.—
San Antonio July 25, 2012, pet. denied) .............................................7

*Rotating Servs. Indus. v. Harris,*
245 S.W.3d 476 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) . 18

*Seureau v. ExxonMobil Corp.,*
274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008, no pet.)...... 17

*Sharyland Water Supply Corp. v. City of Alton,*
354 S.W.3d 407 (Tex. 2011) ................................................................ 12

*Shields Ltd. P'ship v. Bradberry,*
526 S.W.3d 471 (Tex. 2017) ........................................................... 20, 21

*Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Colo. Indep. Sch. Dist.,*
660 S.W.3d 767 (Tex. App.—Eastland 2023, no pet.) .................. 13, 14

*Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Greenville Indep. Sch.
Dist.,*
No. 05-21-01012-CV, 2022 Tex. App. LEXIS 4952 (Tex. App.—
Dallas July 19, 2022, pet. denied) ........................................... *passim*

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) .............................................. 4, 9, 20, 21

*Texas Farmers Ins. Co. v. McGuire,*
744 S.W.2d 601 (Tex.1988) ............................................................. 7, 18

*Tooke v. City of Mexia,*
197 S.W.3d 325 (Tex. 2006) ............................................................. 1, 17

*Ulico Cas. Co. v. Allied Pilots Ass'n,*
262 S.W.3d 773 (Tex. 2008) ..................................................... 7, 18, 19

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie,*
578 S.W.3d 506 (Tex. 2019) ...............................................................5, 6

*Washington National Insurance Co. v. Craddock,*
109 S.W.2d 165 (Tex. 1937) ........................................................... 7, 18

*Worsdale v. City of Killeen,*
578 S.W.3d 57 (Tex. 2019) ................................................................ 16

*Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.,*
449 S.W.3d 98 (Tex. 2014) ............................................................ 8, 16

**Statutes**

Tex. Gov't Code § 311.034 ............................................................... 1, 17

Tex. Loc. Gov't Code
§ 271.151(2)(A) ............................................................................ 1
§ 271.152 ........................................................................... *passim*
§ 271.153 ................................................................................ 12, 15
§ 271.153(a)(1).................................................................. *passim*
§ 271.153(b)(1).......................................................................22
§ 271.153(c) ............................................................................. 1
§ 271.155 ........................................................ 15, 16, 17, 19
§ 271.157 ..............................................................................17

**Other Authorities**

House Research Org., Bill Analysis,
Tex. H.B. 2039, 79th Leg., R.S. (2005) ............................................23

Senate Research Ctr., Bill Analysis,
Tex. H.B. 2039, 79th Leg., R.S. (2005) ............................................23

# I.
## INTRODUCTION [1]

Immunity waivers must be clear, unambiguous, and narrowly construed in favor of retaining immunity. *See* TEX. GOV'T CODE § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29 (Tex. 2006). Section 271.152 of the Act waives immunity for the limited and defined purpose of adjudicating a claim for breach of written contracts that are executed by local governmental entities and contain the essential terms of the parties' agreement. *See* TEX. LOC. GOV'T CODE §§ 271.151(2)(A), 271.152. The waiver is further restricted to defined types of damages and a narrow category of equitable relief for a specific type of contract that is not at issue here. *Id.* § 271.153(c).

The Texas Legislature struck a policy balance in the Act. *City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597, 602 (Tex. App.—San Antonio 2012, pet. denied). Immunity was waived to allow a contracting party to hold a local governmental entity accountable for its express contractual obligations, while still promoting fiscal predictability by limiting a local governmental entity's financial

---

[1]   All capitalized terms in this Reply are given the same meaning as defined in the Fund's opening brief.

1

exposure to the "amounts due and owed" under the written terms of their properly executed contracts. TEX. LOC. GOV'T CODE § 271.153(a)(1).

The College advocates for a far more expansive view of the Act that would permit a breach of contract plaintiff to import immunity-barred equitable theories like waiver and estoppel – or possibly even intentional tort theories like fraud and bad faith – into a breach of contract claim under the guise of what it characterizes as contract "defenses," which would expose local government entities to unbounded liability far beyond that provided under the express, bargained-for terms in their properly executed contracts.

This case well-illustrates the inherent flaw in such an expansive interpretation. It would allow the College to create new and different self-insurance coverage than what it (and other Fund members) expressly agreed to provide one another. The College attempts to extend the incorrect interpretation of the Act in the materially distinguishable *Colorado* and *Greenville* cases (which misconstrued the Act to allow equitable waiver and estoppel theories to be asserted against the Fund in a purely *defensive* context), to allow the College to invoke equitable theories *offensively*, thereby creating new and different RCV coverage,

2

and exposing the Fund and its other members to a financial risk that they did not agree to share.

The College therefore does not merely seek to avoid its obligation to comply with conditions precedent to recovery. It is attempting to avoid its own performance obligations under the Coverage Documents to *create* coverage where none exists. Today the College invokes equitable theories to attempt to create coverage where none exists; tomorrow it and others may resurrect intentional tort theories for the same purpose. Adopting the College's sweeping interpretation of the limited immunity waiver in the Act would greatly expand its scope and eviscerate the Fund's inherent immunity from suit and immunity from unlimited liability.

For the reasons discussed in the Fund's Brief and in this Reply, the Court should reverse the trial court's order denying the Fund's Jurisdictional Plea.

## II.
## ARGUMENT

### A.  THE COLLEGE MISSTATES THE STANDARD OF REVIEW APPLICABLE TO THE FUND'S JURISDICTIONAL CHALLENGE.

The College repeatedly asserts that its pleading *allegations* alone determine whether the Fund's immunity has been waived. College Brief,

3

at 7, 12, 16, 17. But the College's assertion is based upon a false premise: the incorrect claim that the Fund "did not raise an evidentiary challenge to the existence of jurisdictional facts . . . but instead challenge[s] the face of the College's Petition." *Id.* at 16-17. That is incorrect. The Fund *did* contest the sufficiency of the College's jurisdictional allegations and the Fund *did* submit a substantial evidentiary record that conclusively negated them.[2]

When an immune government defendant contests a plaintiff's jurisdictional allegations <u>and</u> offers evidence to defeat them – as the Fund did here – to avoid dismissal the plaintiff bears the burden to adduce its own evidence creating a genuine fact issue with respect to the challenged allegations. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). The Court's appellate review therefore is not confined to the face of the pleadings. *Id.* The Court must also consider the evidentiary record and "review the evidence under a standard

---

[2] CR 39 ("The Fund contests the sufficiency of the College's jurisdictional allegations and has submitted evidence that under Texas law disproves conclusively the possibility of allegations upon which jurisdiction might be based."), 60-110, 166-167 ("The Fund contests the sufficiency of the College's jurisdictional allegations. The Fund has submitted evidence that under Texas law conclusively negates jurisdiction for the College's extracontractual claims and defenses."), 187-435.

4

mirroring that of summary judgment," to determine whether the College met its burden to create a genuine fact issue concerning its jurisdictional allegations. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 734 (Tex. 2020).

B.   **THE COLLEGE CANNOT OVERCOME THE FUND'S IMMUNITY THROUGH ARTFUL PLEADING.**

A plaintiff may not expand a limited "[immunity] waiver through artful pleading." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019). To combat artful pleading, Texas courts look to the *substance* of the plaintiff's claims, not the labels attached to the causes of action, to determine whether a plaintiff's claims are barred by immunity. *Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 704 (Tex. App.—Corpus Christi—Edinburg 2011, no pet.); *see also McLennan Cnty. Water Control & Improvement Dist. #2 v. Geer*, No. 10-17-00399-CV, 2020 Tex. App. LEXIS 5663, 2020 WL 4218085, at *4 (Tex. App.—Waco July 22, 2020, no pet.) (mem. op.) (concluding trial court erred in denying defendant's plea to the jurisdiction because plaintiffs' factual allegations encompass matters falling outside the limited waiver of immunity in the Texas Tort Claims Act).

The College contends that it has not asserted a cause of action against the Fund for waiver (or previously, for unconscionability, fraud,

and bad faith), but has instead merely asserted "factual allegations or theories . . . to support its breach of contract claim." *See* College Brief, at 21.[3] But the "factual allegations or theories" in the College's live pleadings are what determine the extent to which its claims fall within limited statutory immunity waiver, *not* the College's recharacterization its various equitable theories as component parts of a breach of contract claim. *McKenzie*, 578 S.W.3d at 513; *Dyer*, 358 S.W.3d at 704.

The College cannot, through artful pleading, import immunity-barred equitable theories such as waiver and estoppel (or immunity-barred tort theories such as fraud and bad faith)[4] into its breach of

---

[3] Here, the College takes liberty with the factual record when it states that the College "has *never* sought 'exemplary, and treble damages'" from the Fund. *See* College Brief, at 21 (emphasis added). The College cites to its First Amended Petition filed after the Fund filed its initial Jurisdictional Plea, but ignores its Original Petition – the live pleading when the Fund filed its Jurisdictional Plea – which expressly prayed for "treble/exemplary damages from and against *Defendants*." CR 25 (emphasis added).

[4] The College's equitable theories remain a moving target. The College initially asserted only waiver and unconscionability in its pleadings, *see* CR 12, 115, but it has since dismissed with prejudice any unconscionability arguments (as well as its various intentional tort theories) and does not address unconscionability in its Brief, reflecting that it now has been abandoned. *See Methodist Hosp. v. Addison*, 574 S.W.3d 490, 509 (Tex. App.—Houston [14th Dist.] 2019, no pet.). *See* App. F. The College did not plead estoppel in either its original or amended petition. *See* CR 7-26, 111-123 (no mention of the words "estoppel" or "estopped"). Yet, the College's Brief discusses estoppel as if it did. *See, e.g.*, College Brief, at 11, 14, 26 ("An example would be the College's defense that [the Fund] *is estopped from asserting* or has waived . . .")(emphasis added). This reply will focus on the pleaded waiver theory that the College has not dismissed with prejudice, but the Fund's

6

contract claim to *expand* the limited scope of the immunity waiver in Section 271.152 of the Act to *create* additional RCV coverage where none exists under the express written terms of the parties' agreement.[5]

**C.    THE TEXAS SUPREME COURT DISAPPROVED *CITY OF MESQUITE* AND THE NOTION THAT COURTS NEED NOT "PARSE THE PLEADINGS" TO DETERMINE THE SCOPE OF THE IMMUNITY WAIVER UNDER THE ACT.**

As discussed on pages 30-32 of the Fund's Brief, the Texas Supreme Court has expressly disapproved of *City of Mesquite,* and other cases that adopted its rationale,[6] which held that a court need not "parse further the pleadings or contract to determine whether the legislature has waived immunity," as long as the contract being sued on "falls within the provisions of section 271.152." *City of Mesquite v. PKG Contracting, Inc.,*

---

arguments concerning the waiver doctrine apply equally to any purported estoppel theory.

[5]    As discussed *infra* at Section II.D.3, the Texas Supreme Court has long held that the equitable doctrines of waiver and estoppel are not available to "create insurance coverage when none exists by the terms of the policy." *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 780 (Tex. 2008); *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex.1988); *Washington National Insurance Co. v. Craddock,* 109 S.W.2d 165, 166 (Tex. 1937); *see also Prime Time Family Entertainment Center, Inc. v. Axis Insurance Co.,* 630 S.W.3d 226, 232 (Tex. App.—Eastland 2020, no pet.) ("the contractual coverage of an insurance policy cannot be expanded by waiver or estoppel on the part of the insurer . . . The manner in which [the insurer] adjusted the claim cannot create coverage by either waiver or estoppel.").

[6]    *See, e.g., Roma ISD v. Ewing Const. Co.,* No. 04-12-00035-CV, 2012 Tex. App. LEXIS 5968, at *9 (Tex. App.—San Antonio July 25, 2012, pet. denied); *Port Freeport v. RLB Contracting Inc.,* 369 S.W.3d 581, 591 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *City of Mesquite,* 263 S.W.3d at 448.

263 S.W.3d 444, 447 (Tex. App.—Dallas 2008, pet. denied); *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 110 n.54 (Tex. 2014).

*Zachry* disapproved *City of Mesquite* expressly. The *Zachry* court did not end its inquiry after concluding that the government contract at issue in that case was a contract subject to immunity waiver in the Act. *Zachry*, 449 S.W.3d at 106 ("The contract between the Port and Zachry qualifies."). The *Zachry* court proceeded to do what the *City of Mesquite* line of cases had incorrectly held was *not* required – it "parse[d] further" the pleadings and contract to determine whether the damages and remedies sought fell within the scope of those permitted under the other limiting provisions in the Act. *Id.* at 108-110 ("The Act waives immunity for contract claims *that meet certain conditions*: the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc.") (emphasis added).

The multi-level analysis the Texas Supreme Court endorsed in *Zachry* is illustrated by the funnel graphic on page 20 of the Fund's Brief. The scope of the immunity waiver under the Act is limited to only certain claims, certain damages and relief, but not others. *See Zachry*, 449

8

S.W.3d at 108-110.

The Act does not function as depicted by the College's "umbrella" graphic and "*broadly* waive governmental immunity" for all claims that in any way relate to a government contract, such as waiver and estoppel.[7] *See Miranda*, 133 S.W.3d at 226–227; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("We interpret statutory waivers of immunity *narrowly*, as the Legislature's intent to waive immunity must be clear and unambiguous.")(emphasis added).

Accordingly, the Court must analyze the individual damage and liability theories asserted by the College to determine whether they fall within the scope of the statutory terms which define and limit narrow immunity waiver in Section 271.152.

D.    THE ACT DOES NOT WAIVE THE FUND'S IMMUNITY FROM SUIT AND LIABILITY BASED UPON THE COLLEGE'S EQUITABLE THEORIES, WHICH IT ASSERTS *OFFENSIVELY* IN AN ATTEMPT TO CREATE COVERAGE WHERE NONE EXISTS.

1.    The Express Terms of the Coverage Documents Do Not Provide RCV Coverage for Unrepaired and Unreplaced Losses.

Relying exclusively on the allegations in its pleadings, the College

---

[7]    CR 445.

9

asserts that "there is no reasonable dispute" that the RCV damages it seeks are "expressly made due and owed/owing under the [Coverage Documents]." *See* College Brief, at 44-45. Not so. The Fund disputed the College's jurisdictional damages allegations below and offered evidence that conclusively disproved them.

The proper analysis of the College's RCV damages theory starts with an examination of the plain and unambiguous language of the RCV coverage terms in the Coverage Documents. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written."). The Property Coverage Agreement expressly limits RCV coverage to the **_lesser_** of three amounts – one of which is the out-of-pocket expenses a member paid to actually and necessarily repair or replace damaged property.[8] Thus, unless the College incurred unreimbursed, out of pocket expenses to actually and necessarily repair or replace the College's allegedly damaged property, no RCV coverage exists under the express terms of the Coverage Documents.

"[C]ourts across the country that have considered the meaning of the same or similar [RCV] language in a property insurance policy have

---

[8]  CR 941, 1020.

universally held that such language requires repair or replacement of the destroyed property before the insured is entitled to recover replacement cost damages." *Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501,* 261 S.W.3d 861, 863 (Tex. App.—Dallas 2008, pet. denied) (collecting cases). "[T]he replacement of damaged property is an event that ***triggers coverage*** . . . [and] [t]o allow an insured to recover replacement costs ***in the absence of actual replacement*** would permit the insured to recover for ***a loss he has not suffered***." *Id.* at 863-864 (emphasis added).

The College seeks to recover *only* RCV damages. *See* College Brief, at 26 ("the College has sought to recover [RCV] benefits under the policy as its measure of damages."). However, the undisputed record establishes that the College has neither repaired nor replaced *any* of the allegedly damaged properties for which it now claims it is entitled to RCV coverage.[9] Accordingly, no RCV coverage is "due and owed/owing" under

---

[9] CR 189, 280. The College did not allege and it adduced no contrary evidence of any timely repair or replacement of its allegedly damaged property that was not paid by the Fund. The College's repair *estimates* prepared by its retained expert, Jose Alfredo Villalobos, are no evidence of actual out of pocket repair or replacement losses that would trigger RCV coverage. *See, e.g., Green Acres Baptist Church, Inc. v. Bhd. Mut. Ins. Co.,* No. 6:23-cv-566-JDK, 2025 U.S. Dist. LEXIS 126690, at *21-22 (E.D. Tex. 2025) ("Estimates for work to repair or replace property that [plaintiff] has not yet repaired or replaced . . . are not competent evidence of the replacement cost value allegedly owed to [plaintiff] under the policy.").

the express terms of the Coverage Document. *See, e.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 413 (Tex. 2011) (a request for damages not recoverable under the contract is not an amount "due and owing" for purposes of Section 271.153); *Kan. City S. v. Port of Corpus Christi Auth.*, 305 S.W.3d 296, 307 (Tex. App.—Corpus Christi 2009, pet. denied) (same).

2. **Unlike in *Colorado* and *Greenville*, the College Asserts Waiver and Estoppel Offensively, Purportedly to Create RCV Coverage Where None Exists.**

For the reasons just discussed, the College's breach of contract claim does not seek to enforce the express terms of the Coverage Documents against the Fund – *i.e.*, the only claim for which the Legislature has narrowly waived the Fund's immunity – because the express terms of the Coverage Documents do not provide RCV coverage for hypothetical repairs to, or the replacement of damaged property, that have not actually and necessarily been made.[10]

The College instead attempts to utilize the equitable doctrines of waiver and/or estoppel to create new and different RCV coverage for itself that does not require the College to first suffer a "loss" by making (and

---

[10]  CR 941, 1020.

paying for) actual repairs or replacement of damaged property. *See* College Brief, at 26-27. It is that "equitably-created RCV coverage" that the College sues to have the Fund pay.

In support of the College's argument that the Act waived the Fund's immunity based upon "equitably-created coverage" theories, the College, as it did below, relies primarily on two sister court opinions in *Colorado* and *Greenville*. *See* College Brief, at 22-27. But *Colorado* and *Greenville* are materially distinguishable from this case. Unlike in *Colorado* and *Greenville*, the College asserts its equitable theories *offensively* in an attempt to create coverage where none otherwise exists, not simply as defenses to the satisfaction of a condition precedent asserted by the Fund.

The *Colorado* court emphasized that its decision turned on "constru[ing] the context in which these [equitable] theories have been asserted." *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Colo. Indep. Sch. Dist.*, 660 S.W.3d 767, 769 (Tex. App.—Eastland 2023, no pet.). And, because the school district in that case invoked the equitable doctrines of waiver and estoppel in its amended pleadings solely "in response to the defense of an unfulfilled condition precedent raised by the Fund," the court held that they were "raised in a *defensive* context [and] fall within

13

the Act's waiver of immunity." *Id.* (emphasis in original); *see also Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Greenville Indep. Sch. Dist.*, No. 05-21-01012-CV, 2022 Tex. App. LEXIS 4952, at *8 (Tex. App.—Dallas July 19, 2022, pet. denied) ("Greenville's *defensive* theories benefit from the same waiver of immunity.") (emphasis added).

Here, the College first raised its waiver theory in its *Original Petition*, not in response to any defense that the College had failed to satisfy a condition precedent.[11] In addition, contrary to its mischaracterization throughout the College's Brief, the RCV coverage terms are not "conditions precedent" to recovery under the Coverage Documents. *See* College Brief, at 23, 27. Repair and replacement are **coverage terms** that define the scope of RCV coverage provided to the College and the Fund's other governmental members. *See Fitzhugh 25 Partners, L.P.,* 261 S.W.3d at 863 ("It is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional [RCV] coverage."). As a breach of contract plaintiff, the College has the threshold burden to prove that it has suffered a loss for which RCV coverage exists under the Coverage Documents – *i.e.*,

---

[11] CR 12.

14

unreimbursed, out-of-pocket expenses to actually repair or replace damaged property. *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014).

The context in which this case arises therefore is materially different from the circumstances in *Colorado/Greenville,* and the College has not addressed those material distinctions

Accordingly, even if Section 271.155 were construed to expand Section 271.152's immunity waiver to include other subordinate equitable *defenses* that the Texas Legislature chose not to include in Section 271.153 of the Act – which for the reasons discussed in the Fund's Brief and the following subsection, it should not – the College has *not* asserted its equitable theories in a purely defensive manner as did the plaintiffs in *Colorado* and *Greenville*, and the Fund remains immune from the College's attempt to assert those theories offensively, to *create* RCV coverage that does not exist under the contract.

3.  Section 271.155 Does Not Grant an Immunity Waiver for the College's Equitable Theories.

As discussed in the Fund's Brief, the purpose of Section 271.155 is to ensure that the Act only waives a *defendant* governmental entity's immunity and not any of *its* other defenses or damage limitations.

15

*Zachry*, 449 S.W.3d at 107 ("Section 271.155 preserves defenses other than immunity."). The title of Section 271.155 is "No Waiver of *Other Defenses*" (emphasis added), indicating that it refers to *other* defenses *of the party whose immunity is being waived by the Act*. That section therefore only applies in circumstances where a party that has sued a local government contends that the Act has also waived the *defendant* local government's contractual defenses or damage limitations—its *other* defenses—in addition to its immunity. For example, it would be nonsensical to interpret Section 271.155 as preserving a *plaintiff's* right to enforce a "limitation on damages." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 73 (Tex. 2019) (observing that statutes should be construed to avoid "glaringly absurd" results).

That is the only reasonable interpretation of Section 271.155 and it is consistent with *Zachry's* holding that Section 271.155 is a "*limitation . . . on the waiver of immunity*" in Section 271.152. *Zachry*, 449 S.W.3d at 108 (emphasis added). The *Colorado* and *Greenville* courts' interpretation of Section 271.155, which the College advocates for here, results in a significant and unlimited *expansion* of the immunity waiver in Section 271.152. Under that reading of the statute, the Act would no

16

longer provide only a limited waiver of immunity to adjudicate contract disputes based upon the express terms of a written government contract. Instead, local governments would be exposed to open-ended liability based upon non-existent contract terms and liability based upon otherwise immunity-barred equitable and/or intentional tort theories,[12] as long as a plaintiff characterized them as contract "defenses." Such a construction does not comport with the plain meaning of the statute or the legal requirement to narrowly construe waivers of immunity. *See* TEX. GOV'T CODE § 311.034; *Tooke*, 197 S.W.3d at 328–29.

The College's claim that Section 271.155 waives the Fund's immunity based upon equitable theories also is wrong for another reason. By its terms, Section 271.155 preserves only "a defense or limitation on damages *available to a party to a contract . . .*" (emphasis added). As a matter of law, neither waiver nor estoppel (to the extent it was pled) are

---

[12] *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012)(applying equitable defenses to governmental entities "invades the domain of the Legislature and cuts against the very nature of sovereign immunity."); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[T]he Legislature has not waived immunity with respect to the intentional tort of fraud"); TEX. LOC. GOV'T CODE § 271.157 ("This subchapter does not waive sovereign immunity to suit for a cause of action for a negligent or intentional tort.").

"available" to the College to create RCV coverage where it does not exist.

More than 85 years ago, the Texas Supreme Court held in *Washington National Insurance Co. v. Craddock* that an insured cannot use the waiver doctrine to create coverage in an insurance contract. 109 S.W.2d at 166. The rule has since expanded to include the estoppel doctrine, and has repeatedly been reaffirmed by the Texas Supreme Court and various intermediate appellate courts. *See, e.g., Ulico Cas. Co.*, 262 S.W.3d at 780 ("[W]aiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.") (emphasis omitted); *McGuire,* 744 S.W.2d at 602–03 ("The doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy"); *Nat'l Fire Ins. Co. v. State & Cty. Mut. Fire Ins. Co.*, No. 01-11-00176-CV, 2012 Tex. App. LEXIS 7729, at *15 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (same); *Prime Time Family Entertainment Center, Inc.*, 630 S.W.3d at 232 ("[T]he contractual coverage of an insurance policy cannot be expanded by waiver or estoppel on the part of the insurer . . . The manner in which [the insurer] adjusted the claim cannot create coverage by either waiver or estoppel."); *Rotating Servs. Indus. v. Harris*, 245 S.W.3d 476, 487-488 (Tex. App.—Houston

[1st Dist.] 2007, pet. denied)("Settled Texas law precludes a party from invoking estoppel to create insurance coverage where none exists under the terms of the policy."); *Farmers Tex. Cnty. Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. App.—Austin 1980, writ ref'd n.r.e.), abrogated by *Ulico Cas. Co.*, 262 S.W.3d 773 ("It is well established that, whereas the doctrines of waiver and estoppel may operate to avoid conditions that would cause a forfeiture of an insurance policy, they will not operate to change, re-write or enlarge the risks covered by the policy.").

Accordingly, even if the College had asserted its equitable theories in a purely defensive context as did the school district plaintiffs in *Colorado* and *Greenville*, which it did not do, waiver and estoppel are not "available to [the College]" to create RCV coverage that does not exist under the express terms of the Coverage Documents – such as coverage for hypothetical repairs that have not been made. Section 271.155 therefore does not expand Section 271.152's limited waiver of immunity to include liability based upon the College's equitable theories.

### 4. The College Did Not Meet its Evidentiary Burden.

A plaintiff must affirmatively demonstrate that a claim is *viable* in order to establish that immunity does not apply or has been waived. *See,*

19

*e.g.*, *Matzen v. McLane*, 659 S.W.3d 381, 389 (Tex. 2021). Conclusory pleading allegations are insufficient where, as here, the Fund has contested the jurisdictional allegations and offered evidence to defeat them. *Miranda*, 133 S.W.3d at 227.

The College did not adduce *any* jurisdictional evidence regarding its waiver or now-dismissed unconscionability theory, and it does not direct the Court to any jurisdictional evidence in its Brief. The College instead concedes that it supported its arguments against the Fund's jurisdictional challenge "by simply citing to the College's First Amended Petition." *See* College Brief, at 48. The College's pleadings are not evidence, and they do not create a genuine fact issue regarding:

- The effect of the enforceable "no waiver" provision in the underlying contract, which permits waiver of a contractual right or obligation "only when expressly waived in writing by the waiving party," and forecloses any implied waiver based upon mere "act or omission."[13] *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) ("[A]s a general proposition, nonwaiver provisions are binding and enforceable.");

- The absence of any written waiver by the Fund of its rights under the Coverage Documents;

- The fact that the Fund's conduct was entirely consistent with the contract's waiver restrictions and the RCV coverage terms, including its approval of four written extensions of

---

[13] CR 176, 195.

20

RCV coverage repair deadline.[14] *Id. at* 474 (waiver of a non-waiver clause requires, at a minimum, conduct that is inconsistent with its terms);

- The lack of any "shocking" circumstances surrounding the negotiation of the underlying contract between the Fund and the various governmental entity members who created the Fund. *LeBlanc v. Lange*, 365 S.W.3d 70, 88 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]he circumstances surrounding the negotiations must be shocking" to warrant a finding of procedural unconscionability.);[15] and

- The absence of any contract terms that are "so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

Accordingly, even if the College was permitted to assert its equitable theories against the Fund, which it cannot do, the College did not satisfy its evidentiary burden to create a genuine fact issue about whether it has *viable* equitable theories that could effect a waiver of the Fund's immunity. *Matzen*, 659 S.W.3d at 389; *Miranda*, 133 S.W.3d at 227.

## E. THE ACT DOES NOT WAIVE THE FUND'S IMMUNITY FROM THE COLLEGE'S CONSEQUENTIAL DAMAGES CLAIM.

The only consequential damages for which a waiver of immunity

---

[14] CR 189, 941.

[15] The College has dismissed with prejudice any argument that the circumstances surrounding the parties contract were unconscionable, or involved fraud, bad faith, misrepresentations, or other intentionally tortious conduct. *See* App. F.

21

exists under the Act is for "any amount owed as compensation for the increased cost to perform the work *as a direct result of <u>owner-caused</u> delays or acceleration.*" TEX. LOC. GOV'T CODE §§ 271.153(a)(1), (b)(1) (emphasis added).

According to the College, because the term "owner-caused delays" is not defined in the Act, that term does not necessarily mean the owner of property, and the Fund therefore could be held liable for delay damages as "the owner of TASB's risk management programs, including property coverage." *See* College Brief, at 39. But the plain and ordinary meaning of the statutory text does not support the College's position, as the term "owner-caused delays" plainly refers to "delay damages" in the construction context.

"'Delay damages' is a term of art in the construction industry . . . ." *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 393 (Tex. 1997) (Gonzalez, J., dissenting). It refers to construction damages "'arising out of delayed completion, suspension, acceleration or disrupted performance'; these damages compensate the contracting party that is injured when a project takes longer than the construction contract specified." *Cty. of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 181 (Tex. App.—Houston [1st

22

Dist.] 2016, pet. denied) (citing Phillip J. Bruner & Patrick J. O'Connor, 5 Construction Law § 15:29 (2002)). When the Legislature authorized a recovery of damages for the "increased cost to perform the work *as a direct result of <u>owner-caused</u>* delays or acceleration," it did so in the context of a contractor plaintiff who had been hired to perform work on property owned by a local governmental entity.

That construction of the statute is consistent with the Act's legislative history, which emphasizes the Act's importance to construction contractors. *See also* House Research Org., Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005) (explaining that proponents of Section 271.152 had argued that it would "bring fairness to business relationships between *contractors* and local government entities," avoid "a fundamentally unfair situation that denie[d] redress . . . to a *contractor* who completed a project for a city that refused to pay," and address the concerns of *contractors* who "do not bid for local government contracts."); Senate Research Ctr., Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005).

By its plain terms, Section 271.153(a)(1), does not apply here because the College – *not* the Fund – is the "owner" of the relevant

23

properties and it did not allege or adduce any jurisdictional evidence that it had incurred increased costs to perform work as a direct result of *its* own "owner-caused delays or acceleration."

The College's characterization of *City of Corpus Christi v. Graham Construction Services, Inc.* as having "rejected a similar argument" is wrong. *See* College Brief, at 39. In *Graham Construction Services, Inc.*, the City of Corpus Christi (the "City") was sued for delay damages under Section 271.153(a)(1) by a construction contractor who had been hired to build a waste treatment plant for the City. *See* No. 13-19-00367-CV, 2020 Tex. App. LEXIS 4734, at *2-4 (Tex. App.—Corpus Christi June 25, 2020, pet. denied). The City argued that its immunity was not waived under Section 271.153(a)(1) because the alleged construction delays were caused by the City's independent contractor, Carollo, and not the City-owner itself. *Id.* at *7. The *Graham Construction* court found a jurisdictional fact issue existed that allowed the claim to go forward because the construction contract identified Carollo as the "Owner's Representative." *Id.* Thus, whether caused directly by the City-owner, or by its City's designated owner-representative, the alleged delays were caused by the owner of the property being constructed.

24

*Graham Construction* does not stand for the proposition that a waiver of immunity exists for delay damages under Section 271.153(a)(1) in the non-construction context, simply because the plaintiff asserts that the government defendant "owns" something.

### III.
### PRAYER

The Fund respectfully requests that this Court reverse the trial court's orders denying the Jurisdictional Plea and granting the College's MSJ on jurisdictional grounds, and grant the Fund such other and further relief, whether legal or equitable, to which it may show itself to be justly and equitably entitled.

Respectfully submitted,

By: */s/ Jack W. Higdon*
    Jack W. Higdon
    jack.higdon@blankrome.com
    State Bar No. 24007360
    Barry Abrams
    barry.abrams@blankrome.com
    State Bar No. 00822700
    Joshua A. Huber
    josh.huber@blankrome.com
    State Bar No. 24065457
    BLANK ROME LLP
    717 Texas Avenue, Suite 1400
    Houston, Texas 77002-2727
    (713) 228-6601

(713) 228-6605 (Fax)

ATTORNEYS FOR APPELLANT, TEXAS
ASSOCIATION OF SCHOOL BOARDS
RISK MANAGEMENT FUND

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this reply brief complies with the type-volume restrictions of TEX. R. APP. P. 9.4(e), (i)(2)(C). Exclusive of the portions exempted by Rule 9.4(i)(1), this reply brief contains 4,575 words. I further certify that based on a word count run in Microsoft Word, the aggregate of all briefs filed by Appellant does not exceed 27,000 words and is 12,510 words (excluding items exempted under TEX. R. APP. P. 9.4(i)(1)).

_/s/ Jack W. Higdon_
Jack W. Higdon

## CERTIFICATE OF SERVICE

I certify pursuant to TEX. R. APP. P. 9.5(b)(1) that a true and correct copy of the foregoing and/or attached instrument was electronically served on counsel for all parties on August 18, 2025, through the Fourth District Court of Appeals' electronic filing manager, as indicated below:

**Via Electronic Service:**
Preston J. Dugas III
pdugas@dcclawfirm.com
Vincent P. Circelli
vcircelli@dcclawfirm.com
Andrew D. Spadoni
aspadoni@dcclawfirm.com
Sarah Arroyo
sarroyo@dcclawfirm.com
DUGAS & CIRCELLI, PLLC
4800 Bryant Irvin Ct.,
Fort Worth, Texas 76107

*Jack W. Higdon*
Jack W. Higdon

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Penny Johnson on behalf of Jack Higdon
Bar No. 24007360
pljohnson@blankrome.com
Envelope ID: 104505283
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant
Status as of 8/18/2025 2:17 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Gregory Moore | 24055999 | greg.moore@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Jack Higdon | 24007360 | JHigdon@BlankRome.com | 8/18/2025 2:04:46 PM | SENT |
| Preston Dugas III | | pdugas@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |
| Christopher Caudill | 24104717 | christopher.caudill@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Jennifer Saenz | | jsaenz@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |
| Amy Easley | | aeasley@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |
| Andrew Spadoni | | aspadoni@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |
| Vincent PCircelli | | vcircelli@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |
| Sarah Arroyo | | sarroyo@dcclawfirm.com | 8/18/2025 2:04:46 PM | SENT |

Associated Case Party: Texas Association of School Boards Risk Management Fund

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joshua Huber | 24065457 | jhuber@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Barry Abrams | 822700 | barry.abrams@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Jack Higdon | | jack.higdon@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Yvette Manzano | | yvette.manzano@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Joshua Huber | | josh.huber@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Penny Johnson | | penny.johnson@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Liniuse Umunna | | Liniuse.Umunna@blankrome.com | 8/18/2025 2:04:46 PM | SENT |
| Christopher W.Caudill | | Christopher.Caudill@BlankRome.com | 8/18/2025 2:04:46 PM | SENT |
| Gregory J.Moore | | Greg.Moore@BlankRome.com | 8/18/2025 2:04:46 PM | SENT |
| Noorhan Chahal | | noorhan.chahal@blankrome.com | 8/18/2025 2:04:46 PM | SENT |