

# NUMBER 13-23-00065-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LISA ALLEN, AS EXECUTOR OF
THE ESTATE OF GRACE M. ALLEN,
DECEASED,                                                           Appellant,

v.

TEXAS WINDSTORM INSURANCE
ASSOCIATION,                                                        Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

## OPINION

**Before Justices Silva, Peña, and Cron**
**Opinion by Justice Cron**

Under the Texas Insurance Code, coverage disputes between Texas Windstorm

Insurance Association (TWIA) and an insured are subject to judicial review, but if TWIA

fully accepts coverage, appraisal is the exclusive remedy for disputes about the amount of a covered loss. *See* TEX. INS. CODE ANN. §§ 2210.574–.575. Lisa Allen, as independent executor of her mother's estate, filed a first-party insurance suit against TWIA alleging that TWIA partially denied coverage when it refused to pay the estate's claim under a replacement cost endorsement. In explaining its decision, TWIA informed Allen that she had failed to provide sufficient documentation showing that the estate had "actually and necessarily spent" any amount of money to replace the damaged personal property, as required by the endorsement. It is undisputed that the documentation supplied by Allen showed that the replacement items came from her antique store and that Allen credited the cost of the items towards personal loans she previously made to her business. Allen believed the transactions constituted a covered loss under the endorsement because she is the sole beneficiary of her mother's estate.

Contending that this was a dispute about the amount of loss, rather than coverage, TWIA filed a motion for summary judgment arguing that Allen's exclusive remedy under the Texas Insurance Code is to demand appraisal.[1] *See id.* The trial court granted the motion, and Allen challenges that decision on appeal. Because we conclude that the dispute between the parties concerns whether the insured performed a liability-triggering condition precedent, we reverse and remand.

---

[1] Relying on our precedent, TWIA alternatively argued that the trial court lacked subject matter jurisdiction because the trial court was not appointed by the judicial panel on multidistrict litigation in accordance with the Texas Insurance Code. *See Pruski v. Tex. Windstorm Ins. Ass'n*, 667 S.W.3d 460, 466 (Tex. App.—Corpus Christi–Edinburg 2023, pet. granted), *rev'd and remanded*, 689 S.W.3d 887, 893 (Tex. 2024). However, while this appeal was pending, our precedent was overruled by the Supreme Court of Texas, and the parties now agree that the trial court had subject matter jurisdiction over this suit. *See Tex. Windstorm Ins. Ass'n*, 689 S.W.3d at 893. Accordingly, we will not address this alternative jurisdictional argument.

# I.    BACKGROUND

The following facts are undisputed. Allen's late mother, Grace M. Allen, was a named insured under a windstorm policy issued by TWIA that covered a home located in Rockport, Texas. The policy covered both the dwelling (Coverage A) and personal property (Coverage B), with each coverage having its own limit of liability. Under Coverage B, TWIA's liability is limited to the smallest of the following amounts: "(1)The actual cash value of the damaged property at the time of loss, determined with proper deduction for depreciation; (2) The cost to repair or replace the damaged property with material of like kind and quality; or (3) The specified limit of liability of the policy."

The insured also purchased additional coverage through a personal property replacement cost endorsement, which provides in pertinent part:

B.    If you repair or replace the damaged personal property within 545 days of the date we notify you of the amount we will pay under Condition 4.b.(2) of the policy, you may make a claim for reimbursement on a replacement cost basis for the replacement cost of your personal property exceeding $1,500. Upon completion and documentation of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our liability and payment will not exceed the smallest of the following:

    (1)    The limit of liability under this policy applicable to the damaged personal property;

    (2)    The cost to repair or replace the damaged personal property with material of like kind and quality within a reasonable time after the loss; or

    (3)    The amount actually and necessarily spent to repair or replace the damaged personal property as documented by records, including invoices, bills, statements, and receipts, submitted to us under this endorsement.

C.    We will make any payment required by part II.B. not later than the

> > 10th day after your completion and documentation of repairs or replacement.
>
> > D. If you dispute the additional amount we pay for the repair or replacement of the damaged personal property under part II.C. of this endorsement, you may request that this amount be determined by appraisal under Condition 11 of the policy. You must demand an appraisal no later than the 60th day after the date we make payment under part II.C.

During the policy period, the covered home was severely damaged by Hurricane Harvey, and Allen filed a claim on behalf of her mother's estate.

On September 9, 2017, TWIA sent written notice that it was accepting the claim "in full," including the $332,000 policy limit for damage to the dwelling under Coverage A, a $50,000 advance for personal property damage under Coverage B, and $18,000 in additional living expenses. Within a week of the notice, TWIA issued two checks made payable to Allen's mother totaling $400,000.

Based on an inventory submitted by Allen, TWIA paid the estate an additional $44,775.31 for personal property losses under Coverage B, but the two sides could not agree on the proper valuation, with Allen contending that TWIA had undervalued and over depreciated certain items that were antiques. Allen timely invoked the appraisal process, and on June 20, 2018, TWIA's appraiser and the appraisal umpire signed an appraisal award for personal property losses that set the replacement cost value at $270,625, which exceeded the $239,250 limit under Coverage B, and the actual cash value at $145,625. Based on the award, TWIA paid the estate an additional $40,315.16 for the actual cash value of the personal property and notified Allen that the estate could recover up to $104,159.53 in withheld depreciation under the replacement cost endorsement. TWIA

4

explained to Allen that, to do so, she would have to submit documentation, such as receipts, showing that the incurred cost to replace an item exceeded the actual cash value (replacement cost, minus depreciation) assigned to the item by the appraisal panel.

Allen owns an antique and flower shop in San Antonio, Texas. She selected like items from her business as replacement items. To prove that the estate incurred a loss, Allen's certified public accountant sent TWIA a letter stating in relevant part:

> In [my] capacity as a Certified Public Accountant, the undersigned has represented Grace M. Allen, now deceased, Lisa M. Allen, Allen's Flowers & Gifts, Inc. (the "Company"), the Grace M. Allen Living Trust, and the Lisa Marie Allen Heritage Trust.
>
> . . . .
>
> Allen's Flowers & Gifts, Inc., the Company, is a separate and distinct legal entity, a corporation organized and existing pursuant to the laws of the State of Texas under filing number 63024800. This Company was organized on November 17, 1982. Similarly, the Estate of Grace M. Allen is a separate legal entity as is the Grace M. Allen Living Trust, which became an irrevocable trust upon the death of Grace M. Allen. Lisa M. Allen is the daughter of Grace M. Allen. She is the Independent Executor of the Estate of Grace M. Allen under the Last Will and Testament of Grace M. Allen under which all individual assets of Grace M. Allen poured over into the Grace M. Allen Living Trust upon the death of Grace M. Allen, the entire trust estate beneficially passed to Lisa M. Allen. Accordingly, Lisa M. Allen is entitled to all contract rights heretofore belonging to Grace M. Allen, including those rights under the policy of insurance referenced above, as the designated representative of the Estate of Grace M. Allen and under the terms of the Will offered for probate under the Estate [of Grace] M. Allen and under the Grace M. Allen Living Trust.
>
> I have been asked by Lisa M. Allen and her attorney, Myron East of Caldwell East & Finlayson PLLC, also the attorney for the Estate of Grace M. Allen, to prepare an analysis for the purposes of verifying her claim to the purchase and replacement items subject to depreciation under the contract of insurance with TWIA.
>
> All replacement items were purchased by Lisa M. Allen from Allen's Flowers & Gifts, Inc., the Company. The Company had substantial

5

operating losses and capital expenditures which were covered by substantial loans that Lisa M. Allen made to the Company. The purchases made by Lisa M. Allen were applied against loans owing by the Company to her in discharge of such loans. I have prepared a reconciliation showing the loans made by Lisa M. Allen to the Company and the repayment thereof from the purchase of the replacement property by Lisa M. Allen on the spreadsheet transmitted [with] this letter . . . . This reconciliation shows the debits and credits associated with the purchase of the replacement property by Lisa M. Allen from goods sold by the Company, which purchases were accomplished by the discharge of the debt owing by the Company to Lisa M. Allen in like amount.

On December 19, 2019, citing paragraph B(3) of the replacement cost endorsement, TWIA adjuster Russell Shaw notified Allen that, "[b]ecause the documentation submitted does not indicate Grace M. Allen or the Estate of Grace M. Allen has spent any amount for replacement of personal property, we are unable to make any payment under the replacement cost coverage provisions of the policy." The notice also invited Allen to submit any further information or documents that may support the claim.

Allen filed suit in her representative capacity, claiming that TWIA breached the policy by failing to pay the estate in accordance with the replacement cost endorsement. TWIA moved for traditional summary judgment arguing that because it had accepted the estate's claim "in full," the estate's exclusive remedy under the policy and the Texas Insurance Code was to invoke the appraisal process for a second time. Allen responded that TWIA's refusal to pay any amount under the replacement cost endorsement was effectively a partial denial of coverage. The trial court granted the motion and dismissed Allen's suit. This appeal ensued.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any

6

material fact, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review summary judgments de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). We may only affirm on grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338 (Tex. 1993); *see* TEX. R. CIV. P. 166a(c).

## III.     APPLICABLE LAW

### A.     TWIA & Chapter 2210

TWIA is the "insurer of last resort for windstorm and hail insurance in the seacoast territory" of Texas and is governed by Chapter 2210 of the Texas Insurance Code. TEX. INS. CODE ANN. § 2210.001. Under that chapter, an insured must file a claim under a TWIA policy within one year from the date the damage occurs. *Id*. § 2210.573(a). Generally, within sixty days of receiving a claim, TWIA must notify the claimant that it has either: (1) accepted coverage for the claim in full; (2) accepted coverage for the claim in part and denied it in part; or (3) denied coverage for the claim in full. *Id.* § 2210.573(d). If TWIA accepts coverage in full, it must notify the claimant of "the amount of loss [TWIA] will pay" and the time limit to request an appraisal, and it must then pay the claim within ten days of the notice. *Id.* §§ 2210.573(e), 2210.5731(a).

Section 2210.574, entitled "Disputes Concerning Amount of Accepted Coverage," provides in relevant part:

> (a) If [TWIA] accepts coverage for a claim in full and a claimant disputes only the amount of loss [TWIA] will pay for the claim, or if [TWIA] accepts coverage for a claim in part and a claimant disputes the amount of loss [TWIA] will pay for the accepted portion of the claim, the claimant may request from [TWIA] a detailed summary of the manner in which [TWIA] determined the amount of loss [TWIA] will pay.

7

> (b) If a claimant disputes the amount of loss [TWIA] will pay for a claim or a portion of a claim, the claimant, not later than the 60th day after the date the claimant receives the notice described by Section 2210.573(d)(1) or (2), may demand appraisal in accordance with the terms of the [TWIA] policy.

*Id.* § 2210.574(a), (b). Other than a few exceptions that do not apply here, appraisal decisions are binding on the parties and not subject to judicial review. *Id.* § 2210.574(f), (g).

Section 2210.575, entitled "Disputes Concerning Denied Coverage," states that "[i]f [TWIA] denies coverage for a claim in part or in full and the claimant disputes that determination, the claimant . . . must provide [TWIA] with notice that the claimant intends to bring an action against [TWIA] concerning the partial or full denial of the claim." *Id.* § 2210.575(a). TWIA may then require the claimant to submit to alternative dispute resolution, and if that is unsuccessful, "the claimant may bring an action against [TWIA] in a district court in the county in which the loss that is the subject of the coverage denial occurred." *Id.* § 2210.575(b), (e). In such an action, the only issues a claimant may raise are: (1) whether TWIA's denial of coverage was proper; and (2) the amount of damages to which the claimant is entitled. *Id.* § 2210.576(a).

B.    **Appraisal vs. Coverage Disputes**

A common feature of Texas insurance policies, appraisal clauses "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding). Appraisal provides an extra-judicial "remedy for any disagreement regarding the amount of loss." *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus

8

Christi–Edinburg 2004, pet. denied). However, appraisers are "not to construe the policy or decide whether the insurer should pay." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009). Although "[t]he line between liability and damage questions may not always be clear, . . . the scope of appraisal is damages, not liability." *Id.*; *see In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding).

Coverage disputes, on the other hand, concern questions of liability, like whether the loss occurred during the policy period, *see, e.g.*, *E & L Chipping Co., Inc. v. Hanover Ins. Co.*, 962 S.W.2d 272, 275 (Tex. App.—Beaumont 1998, no pet.), whether the loss was caused by a covered peril, *see, e.g.*, *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied), or whether the loss falls within an exclusion to coverage, *see, e.g.*, *StarNet Ins. Co. v. RiceTec, Inc.*, 586 S.W.3d 434, 437 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

## C.    Conditions vs. Covenants

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) A condition precedent to an obligation to perform is an act or event that "must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Id.* Failure to comply with such a condition forfeits coverage. *See, e.g.*, *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 279–81 (Tex. 1972) (finding no liability where insured failed to comply with notice provision). A covenant, by contrast, is "an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104,

9

108 (Tex. 2010).

"In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id.* at 109 (quoting *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)). Put simply, "conditions avoid coverage *unless* an insured does something." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 635 (Tex. 2008). "Conditions are not favored in the law; thus, when another reasonable reading that would avoid a forfeiture is available, we must construe contract language as a covenant rather than a condition." *Id.* at 636.

## IV.    ANALYSIS

TWIA contends that by notifying Allen in 2017 that it was accepting the estate's claim "in full," the estate's exclusive remedy for any subsequent disagreement between the parties was to invoke appraisal. TWIA maintains that it has not denied the estate's claim for recoverable depreciation under the replacement cost endorsement. Rather, "[t]he only dispute concerns whether Allen provided sufficient documentation, as required by the terms of the policy, to show that her mother's estate actually and necessarily paid the cost to repair or replace the damaged personal property," which is not a coverage dispute, according to TWIA.

Allen counters that she supplied all necessary documentation, and the parties simply reached an impasse as to whether the estate performed "a condition for recovery under the language of the policy's replacement cost coverage, which is not a valuation issue subject to appraisal." Although TWIA accepted coverage under Coverage B and

10

paid the actual cash value of the estate's personal property claim, Allen claims that by citing conditional language in the endorsement as the basis for refusing to pay any amount of the estate's additional claim for recoverable depreciation, TWIA partially denied coverage. Under the unusual facts of this case, we agree with Allen that TWIA's 2019 notice amounted to a determination that the estate had failed to comply with a condition precedent, thus precluding TWIA's coverage under the endorsement. Accordingly, the dispute between the parties is justiciable.

As noted above, whether an insured performed a condition precedent is a coverage question. *Id.* at 635. In interpreting a replacement cost claim, one of our sister courts held that, based on conditional language in the insurance policy, actual repair or replacement of the damaged property was a condition precedent to recovery of replacement cost damages. *Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*, 261 S.W.3d 861, 863 (Tex. App.—Dallas 2008, pet. denied) ("Although Texas state courts have not addressed the issue, courts across the country that have considered the meaning of the same or similar language in a property insurance policy have universally held that such language requires repair or replacement of the destroyed property before the insured is entitled to recover replacement cost damages." (collecting cases)). Citing *Fitzhugh* favorably, some of our federal colleagues have reached the same conclusion. *See Kahlig Auto Grp. v. Affiliated FM Ins. Co.*, No. 5:19-CV-1315-DAE, 2021 WL 5227093, at *6–8 (W.D. Tex. May 20, 2021); *Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 WL 4796967, at *5 (N.D. Tex. Sept. 26, 2014); *Brelian, Inc. v. Liberty Mut. Fire Ins. Co.*, No. CV H-09-1383, 2010 WL 11575473, at *15–

11

16 (S.D. Tex. Oct. 28, 2010).

The specific language at issue in *Fitzhugh* provided that "[r]eplacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced." *Fitzhugh*, 261 S.W.3d at 863. The court explained that replacing damaged property "triggers coverage" because "[i]t is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional coverage." *Id.* at 864. Consequently, the court concluded that the insured "was required to replace the damaged property as a condition precedent to its recovery under the policy and that its failure to do so negate[d] its entitlement to recover replacement costs." *Id.*

Here, the endorsement is unambiguous and contains similar conditional language: "If you repair or replace the damaged personal property . . . , you may make a claim for reimbursement on a replacement cost basis for the replacement cost of your personal property exceeding $1,500." The endorsement further provides: "Upon completion and documentation of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our liability and payment will not exceed the . . . amount actually and necessarily spent to repair or replace the damaged personal property as documented by records . . . submitted to us . . . ." Thus, like the insurer in *Fitzhugh*, TWIA's promise to pay on a replacement cost basis was conditioned upon the estate actually repairing or replacing the damaged personal property and providing sufficient proof that such condition was satisfied. *See id.* at 623. Moreover, on its face, the endorsement's use of "if" (and other similar language) is a classic example of conditional performance language. *See Solar Applications*, 327 S.W.3d at 109.

12

Nevertheless, TWIA insists that it did not deny coverage because "it urged Allen to come back with adequate documentation." However, TWIA's determination that Allen's documentation was insufficient was based on TWIA's underlying conclusion that the estate had not suffered a covered loss under the replacement cost endorsement, a point Allen disagrees with. Indeed, in its 2019 notice to Allen, TWIA states, "Because the documentation submitted does not indicate Grace M. Allen or the Estate of Grace M. Allen has spent any amount for replacement of personal property, we are unable to make any payment under the replacement cost coverage provisions of the policy." Under the Texas Insurance Code, this coverage question is justiciable. *See* TEX. INS. CODE ANN. § 2210.575(a), (e); *Fitzhugh*, 261 S.W.3d at 863.

Finally, we are further persuaded that this is a coverage dispute because resolving it goes beyond mere valuation questions statutorily committed to the appraisal process. *See* TEX. INS. CODE ANN. § 2210.574(a), (b). TWIA argues that if we affirm the summary judgment, Allen is not left without a remedy because she can invoke appraisal for a second time.[2] But, to resolve the current dispute, an appraiser would be required to "construe the policy," a legal question generally reserved for the judiciary. *See Farm Lloyds*, 290 S.W.3d at 890. An appraiser would also have to consider the propriety of Allen's claim that the transactions qualified as estate losses because she is the sole

---

[2] We note that TWIA's argument is inconsistent with the testimony of its adjuster Shaw, who said during his deposition that the estate could not challenge TWIA's determination through appraisal because "[t]he appraisal process has already been completed." We agree that the appraisal process has already done its work in this case. When Allen disputed TWIA's valuation of the estate's personal property claim, she invoked appraisal, and an appraisal panel issued an award that established the actual cash value and replacement cost value of the estate's personal property damages. *See* TEX. INS. CODE ANN. § 2210.574(a), (b).

13

beneficiary of the estate, another legal matter not within an appraiser's area of expertise. *See* 28 TEX. ADMIN. CODE ANN. § 5.4212(a) (Tex. Dep't of Ins.) (providing that the primary qualification to serve as an appraiser is experience and training in estimating property damage). Most importantly, the appraiser would ultimately be tasked with determining whether TWIA "should pay" the estate's recoverable depreciation claim, a question that goes beyond the scope of appraisal. *See State Farm Lloyds*, 290 S.W.3d at 890.

For the forgoing reasons, we hold that TWIA partially denied coverage by determining that the estate failed to perform a condition precedent under the replacement cost endorsement. Accordingly, the estate was entitled to seek judicial relief on its recoverable depreciation claim, and the trial court erred by granting summary judgment in favor of TWIA on exclusive remedy grounds.[3] Allen's sole issue is sustained.

## V.     CONCLUSION

We reverse the summary judgment and remand for further proceedings consistent with this opinion.

JENNY CRON
Justice

Delivered and filed on the
2nd day of October, 2025.

---

[3] As this was the only ground for summary judgment presented by TWIA, we express no opinion on the merits of the estate's claim. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338 (Tex. 1993); TEX. R. CIV. P.166a(c).

14